UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 15-13188-GAO

DARYL TAVARES,
Petitioner,

v.

LOIS RUSSO,
Respondent.

OPINION AND ORDER
March 27, 2019

O'TOOLE, D.J.

A Massachusetts Superior Court jury convicted the petitioner, Daryl Tavares, on four sets of indictments alleging various offenses related to five separate home burglaries that occurred over a twenty month period.[1] Each set of indictments included charges for breaking and entering in the daytime with the intent to commit a felony in violation of Massachusetts General Laws Chapter 266, Section 18; larceny over $250 in violation of Massachusetts General Laws Chapter 266, Section 30; and wanton and willful destruction of property over $250 in violation of Massachusetts General Laws Chapter 266, Section 127. After the conclusion of the jury trial, a bench trial was conducted before the trial judge, and Tavares was convicted of being a habitual criminal and a notorious thief.[2] The Massachusetts Appeals Court affirmed the convictions, Commonwealth v. Tavares, 26 N.E.3d 1141 (Mass. App. Ct. 2015) (unpublished decision), and the Supreme Judicial Court denied further appellate review. Tavares subsequently filed the present petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

---

[1] The jury acquitted Tavares of one set of charges arising from one of the alleged break-ins.
[2] Tavares waived his right to a jury trial with regard to these charges.

**I.     Background**

A brief summary of the trial evidence suffices:

On December 17, 2008, Boston Police detectives responded to an apartment on Washington Street in Dorchester to investigate a potential breaking and entering. The police found that one of the doors to the apartment building itself was damaged. The door's lock was broken. The apartment's occupant found that her apartment door, which was unlocked, was also damaged. When she entered her apartment she found the lights on and discovered a variety of items scattered on her bed. Also, she noticed that items on her dresser were knocked over and that various property was missing.

A black glove that did not belong to the occupant or her children was recovered. The glove was submitted for DNA testing by the police. A DNA profile collected from the glove was compared with a database of known profiles, and the petitioner was included as a potential match. The comparison yielded no other potential matches. The victim stated that she did not know the petitioner nor had she ever given him permission to enter her apartment.

The Commonwealth alleged that the petitioner was responsible for another break-in on March 12, 2009. Again DNA evidence was recovered. Although the petitioner was included as a potential match, profiles of other persons also matched. The jury acquitted Tavares of the three indictments related to this incident.

On December 8, 2009, Boston Police officers responded to 38 Fayston Street in Roxbury for a break-in. The occupant had returned to his home after being away for about an hour to find that his apartment door was broken and pried open. He noticed that one of the dresser drawers was open and that several items were missing, including some cash. He also found a hat in the hallway outside of the bedroom that did not belong to him. The police collected this evidence and had it

tested for DNA. The test determined that Tavares was a possible source of the DNA collected from inside of the hat. Neither the victim nor his family knew Tavares, and they had not given him permission to enter their home.

On May 6, 2010, the occupant of an apartment at 163 Delhi Street in Mattapan arrived home to find that both her front and back doors were wide open, and the front door's lock was broken. She discovered that several items were missing, including her TV, a jar of coins, and two watches. She also found a beer can on the ledge in the hallway outside of her apartment that had not been there when she left an hour earlier. Tavares was included as being a possible source of DNA found on the beer can. The occupant did not know Tavares nor had she given him permission to enter her apartment.

Finally, on August 19, 2010, a man who was looking after his sister's apartment at 75 Humbolt Avenue in Roxbury was informed by a neighbor that the police were there conducting an investigation. When he went to the apartment, he found that the door was broken and that the apartment was in disarray. He informed the police that the TV and VCR were missing. He also discovered a cigarette butt on the floor between the couch and the TV console. The man, his sister, and his sister's fiancé did not smoke, and the butt had not been there the previous night. The police collected the cigarette butt as evidence, and, after conducting DNA analysis, the petitioner was included as being the possible source of the DNA found on the cigarette butt.

The Commonwealth also presented evidence concerning the petitioner's criminal history during the habitual criminal proceedings before the trial judge.

## II.     Standard of Review

Post-conviction relief pursuant to § 2254 is an extraordinary remedy, and it is not granted if the state court's decision was merely erroneous or incorrect. See Woodford v. Visciotti, 537

3

U.S. 19, 27 (2002). Rather, a petitioner seeking relief from a claim decided on the merits at the state level must demonstrate that:

> the adjudication of the claim . . . (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"A legal principle is 'clearly established' within the meaning of this provision only when it is embodied in a holding of [the United States Supreme] Court." Thaler v. Haynes, 559 U.S. 43, 47 (2010). Additionally, a state court's decision is "contrary to . . . clearly established federal law" when it "contradicts the governing law set forth in the Supreme Court's cases or confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from its precedent." Brown v. Ruane, 630 F.3d 62, 66–67 (1st Cir. 2011) (quoting John v. Russo, 561 F.3d 88, 96 (1st Cir. 2009)). Further, a decision involves an "unreasonable application" of established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams v. Taylor, 529 U.S. 362, 405–06 (2000); see Companonio v. O'Brien, 672 F.3d 101, 109 (1st Cir. 2012). A state court's factual findings are presumed to be correct unless the petitioner offers clear and convincing evidence to the contrary. Companonio, 672 F.3d at 109 (citing 28 U.S.C. § 2254(e)(1)).

## III. Discussion

The petitioner alleges a scattershot of claims: (1) his due process rights were violated when the Commonwealth failed to show beyond a reasonable doubt that his DNA found at the scene of the crime could only have been deposited during the commission of the crime and not on some other occasion; (2) his right to a fair trial was violated when the trial court improperly joined five

unrelated breaking and entering indictments for a single trial; (3) his protection against double jeopardy was infringed because his larceny convictions merged into his breaking and entering convictions and thus should have been vacated as duplicative; (4) he was improperly sentenced by the trial court as a habitual offender resulting from the improper joining; (5) the Commonwealth's forcible taking of his DNA from a buccal swab was without probable cause and was cruel and unusual; (6) his due process rights were violated when the Commonwealth charged him with multiple offenses resulting from a single act; (7) the prosecution engaged in misconduct by misleading statements and actions and the withholding of exculpatory evidence; and (8) his counsel was constitutionally ineffective. (See Pet. (dkt. nos. 1 & 1-1).)

### A. Sufficiency of the Evidence

The petitioner's first claim is that the Commonwealth failed to prove beyond a reasonable doubt that his DNA could have only been deposited at the various crime scenes during the commission of those crimes. The petitioner's challenge to the sufficiency of the evidence is governed by Jackson v. Virginia, 443 U.S. 307, 319 (1979). When a federal court is reviewing Jackson claims under § 2254, it must presume that all conflicting inferences were resolved in favor of the prosecution, see id. at 326, and it may overturn a state court's decision rejecting a sufficiency of the evidence claim only if that decision was "objectively unreasonable," Coleman v. Johnson, 566 U.S. 650, 651 (2012) (per curiam) (quoting Cavazos v. Smith, 565 U.S. 1, 2 (2011) (per curiam)).

The Appeals Court's decision was not an unreasonable application of clearly established federal law. Under the standards set out by the AEDPA, this Court's review is focused on whether the state court's decision is arbitrary and without support in the record, amounting to an error "great enough to make the decision unreasonable in the independent and objective judgment of the

federal court." See O'Laughlin v. O'Brien, 568 F.3d 287, 299 (1st Cir. 2009) (quoting McCambridge v. Hall, 303 F.3d 24, 36 (1st Cir. 2002)).

Here, the record evidence, viewed in the light most favorable to the Commonwealth, demonstrates that sufficient evidence did exist to support these convictions. The Appeals Court held that "the Commonwealth presented strong evidence that the personal items bearing [Tavares'] DNA were found at the crime scenes immediately after the break-ins and had not been there earlier in the day." Tavares, 26 N.E.3d at *1. Additionally, the court found that "given the personal nature of the items found at the sites of the four break-ins—a hat, a glove, a cigarette, and a beer can—a jury could have concluded beyond a reasonable doubt that the defendant himself left the items behind during the commission of the crimes." Id. at *2. Finally, "the fact that DNA consistent with the defendant's profile was found at all the different sites excluded any reasonable possibility that the defendant had touched these items elsewhere and that another person deposited them at the crime scenes." Id. Those conclusions were not "objectively unreasonable."

### B. Joinder of Indictments

The petitioner argues that the trial court's joinder of five separate breaking and entering indictments for a single trial violated his constitutional right to a fair trial. In this context, the claim is governed by United States v. Lane, 474 U.S. 438, 446 n.8 (1986). See Hernandez v. Commonwealth, 234 F. Supp. 3d 316, 326 (D. Mass. 2017) (applying Lane as "'clearly established' federal law"). In Lane, the Court stated that "misjoinder would rise to the level of a constitutional violation only if it results in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial." 474 U.S. at 446 n.8.

In reviewing the petitioner's claim for misjoinder, the Appeals Court applied the standard set out by the SJC in Commonwealth v. Pillai, 833 N.E.2d 1160, 1166–67 (Mass. 2005), "which

stands for the basic proposition set out by the Supreme Court in Lane." Hernandez, 234 F. Supp. 3d at 326 (discussing Pillai). Because the Appeals Court addressed the merits of Tavares' claim, the deferential standard must be applied. See id. at 327 (citing Cormier v. Saba, 953 F. Supp. 2d 274, 287 (D. Mass. 2013)).

The Appeals Court's denial of the petitioner's claim of misjoinder rested on its conclusion that the trial court acted within its discretion to join the separate charges for a single trial. In reaching this decision the court found that "the five incidents that were tried together here 'are connected by details that reveal a pattern of criminal activity': the time of day, the mode of entry, the nature of the items stolen (jewelry, portable electronic devices, and cash), and the proximity of the crime scenes." Tavares, 26 N.E.3d at *2 (quoting Commonwealth v. Magri, 968 N.E.2d 876, 881 (Mass. 2012)). According to the standards set out in Lane and Pillai, this conclusion did not unreasonably apply federal law.

### C. Double Jeopardy

The petitioner claims a violation of the double jeopardy clause in violation of his constitutional rights under the Fifth and Fourteenth Amendments because the trial court failed to regard the larceny charge and the breaking and entering charge in each instance as effectively merged into a single punishable offense.

The Appeals Court determined that the convictions were not barred by double jeopardy because "neither crime is a lesser-included offense of the other, and convictions on both are deemed to have been authorized by the Legislature and hence not [duplicative]." Tavares, 26 N.E.3d at *2 (alteration in original) (quoting Commonwealth v. Vick, 910 N.E.2d 339, 352 (Mass. 2009)). Additionally, the Appeals Court found that the five sets of indictments related to separate

7

crimes because the crimes were committed "at different times and locations, and involved different victims." Id.

The Double Jeopardy Clause protects a defendant against multiple punishments for the same offense. United States v. Dixon, 509 U.S. 688, 696 (1993). The applicable Supreme Court test for the petitioner's claim is the "same elements" or Blockburger test, which "inquires whether each offense contains an element not contained in the other; if not, they are the 'same offence'[3] and double jeopardy bars additional punishment and successive prosecution." Dixon, 509 U.S. at 696; see Blockburger v. United States, 284 U.S. 299, 304 (1932). A defendant may be convicted and punished for multiple incidents that are similar without violating the Double Jeopardy Clause as long as the relevant statutes prohibit "individual acts" and the incidents consist of "distinct and separate" acts committed at different times. See Blockburger, 284 U.S. at 301–02.

The Appeals Court held as a matter of state law that the offenses of larceny over $250, Mass. Gen. Laws ch. 266, § 30, and breaking and entering, Mass. Gen. Laws ch. 266, § 18, each have an element that the other does not.

Similarly, the petitioner also claims that the trial court's decision to sentence him both as a habitual offender and as a common and notorious thief violated the Double Jeopardy Clause. However, the Appeals Court reasonably rejected Tavares' claim because the court's sentences under both statutes, Mass Gen. Laws ch. 279, § 25 and Mass Gen. Laws ch. 266, § 40, relied on "distinct criminal offenses" under state law. Tavares, 26 N.E.3d at *3. The common and notorious thief conviction was based on Tavares' prior larcenies; the habitual offender conviction was based

---

[3] The spelling is from U.S. Const. Amendment V: "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb . . . ."

on at least one non-larceny offense. The petitioner fails to demonstrate that the Appeals Court's decision was contrary to or an unreasonable application of federal law.

### D. DNA Sample

The petitioner argues that his due process rights were violated when the Commonwealth took a DNA buccal swab without probable cause.[4] The Appeals Court determined that there was no Fourth Amendment violation because:

> [p]ostindictment, a judge may order a defendant to provide a buccal swab so long as the Commonwealth establishes that "the sample sought will probably provide evidence relevant to the question of the defendant's guilt." Commonwealth v. Maxwell, 441 Mass. 773, 779 (2004). Here, the Commonwealth filed the motion five months after the defendant was indicted and made the requisite showing.

Tavares, 26 N.E.3d at *3.

Under Stone v. Powell, 428 U.S. 465, 481–82 (1976), a federal habeas court may not reevaluate the merits of a state court's resolution of a petitioner's Fourth Amendment claims. In Stone, the Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." Id. The only exception to this prohibition is for instances where a petitioner did not have an "opportunity for full and fair litigation" of his claim. Id.; Sanna v. Dipaolo, 265 F.3d 1, 8 (1st Cir. 2001); Hernandez, 234 F. Supp. 3d at 322–23.

It appears from the present record that approximately five months after the petitioner was indicted the Commonwealth moved to compel the petitioner to provide a buccal swab in order to conduct DNA testing. The trial court conducted a hearing on this issue, and it granted the

---

[4] Although the petitioner claims that the Commonwealth's actions violated his Fifth, Sixth, Eighth, and Fourteenth Amendment rights, a DNA buccal swab is considered a search which is governed by the Fourth Amendment and applied to the states via the Fourteenth Amendment. See Maryland v. King, 569 U.S. 435, 446 (2013).

9

Commonwealth's motion. The Appeals Court affirmed that decision. It is clear that the petitioner was afforded an adequate opportunity to litigate this issue before both the trial and appellate courts; therefore, this Court lacks the authority to review the state court's resolution of this claim.

### E. Procedurally Defaulted Claims

The petitioner also claims that the prosecutors engaged in misconduct and that his own counsel was ineffective. The Appeals Court declined to review both of these claims because the petitioner failed to support his arguments to that court with citations or evidence from the record as required. Tavares, 26 N.E.3d at *3. In Martinez v. Ryan, 566 U.S. 1, 9–10 (2012), the Supreme Court held that "a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule." The Court also added that federal habeas review is barred as long as the "state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed." Id. at 10.

The Appeals Court did not address the petitioner's prosecutorial misconduct claim because Tavares did not provide citations to the record, which is required pursuant to Massachusetts Appellate Procedure Rule 16(a)(4). As for the ineffective assistance of counsel claim, the Appeals Court noted that the claim did "not appear indisputably on the record" and that "[t]he preferred method for raising this claim is through a motion for a new trial." Tavares, 26 N.E.3d at *3. Because the Appeals Court's decision with regard to both of these claims is based on "independent and adequate state procedural grounds," this Court cannot review them. See Costa v. Hall, 673 F.3d 16, 23 (1st Cir. 2012) (citing Maples v. Thomas, 565 U.S. 266, 280 (2012)).

### F. Claims Outside of the Habeas Petition

The petitioner's memorandum in support of his petition argues that the trial court erroneously "allow[ed] an amended and faulty indictment in violation of the defendant's due process rights." (Pet'r's Mem. of Law in Supp. of 28 U.S.C. § 2254 at 36–37 (dkt. no. 21).) However, this claim is not identified in the petition, which is required. See Rules Governing § 2254 Cases in the United States District Courts, Rule 2(c) (requiring that all available grounds for relief be presented in the petition).

When a petitioner first presents new grounds for habeas relief in his memorandum of law, rather than his petition, those claims will be barred because "[i]t is the petition for a writ of habeas corpus, not subsequently filed memorandum, which defines the claims for habeas relief." Faulk v. Medeiros, 321 F. Supp. 3d 189, 201 (D. Mass. 2018) (quoting Smiley v. Maloney, No. 01-cv-11648-GAO, 2003 WL 23327540, at *16 (D. Mass. Oct. 31, 2003), aff'd, 422 F.3d 17 (1st Cir. 2005)). Additionally, the petitioner's claim regarding a faulty indictment is considered waived. See id.; see also Logan v. Gelb, 790 F.3d 65, 70 (1st Cir. 2015).

### IV. Conclusion

For the reasons discussed herein, the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is DENIED, and the case is dismissed.

Because the petitioner has not "made a substantial showing of the denial of a constitutional right," no certificate of appealability shall issue. See 28 U.S.C. § 2253(c)(1).

It is SO ORDERED.

/s/ George A. O'Toole, Jr.
United States District Judge